As you notice, there's one judge missing, so this is recorded. He's in under the weather this morning, Judge Goldner, so speak up so he can hear the recording. Please proceed. Case number 5-13-350, McVey v. M.L.K. Enterprises. We have a waiver, so we just have 20 minutes. Counselor, you can proceed. May it please the Court, Your Honors, my name is Kara Jones, and I am representing Southern Illinois Hospital Services, doing business as Memorial Hospital of Carbondale. This case involves the trial court's order adjudicating liens. The plaintiff settled the case for $7,500 and filed a petition to adjudicate liens. There were three lien holders that were served. Memorial Hospital of Carbondale was the only lien holder that perfected their lien at that time, and the court entered an order following the plain language of the Health Care Services Lien Act and awarded and held that the adjudication liens must be pursuant to that act. In doing so, she concluded that 40% of the settlement amount should be awarded to the lien holders. However, since Memorial was the only lien holder that perfected its lien and the statute provides that any category of lien holders can receive no more than one-third, she awarded one-third of the amount of the settlement, $2,500, to Southern Illinois Hospital Services, DVM Memorial Hospital of Carbondale, $2,750 to the plaintiff, and $2,250 to the attorney for the attorney's lien under the act. We are asking that you affirm the court's decision in that matter and the adjudication as set forth in the court's order. In ruling the way that the court did, she acknowledged this court's previous ruling in Stanton v. Ray but concluded that it did not comply with the language of the act and repudiated the Supreme Court's decision in Wendler. In Stanton, this court held that the intent of the legislature was for the plaintiff to receive 30% of the amount of the settlement for her injuries after all liens, expenses, and medical bills had been paid. Accordingly, this court held that in order to ensure that the plaintiff receives 30% of the judgment as intended by the act, it is necessary that the computation of the 40% does not begin until costs associated with bringing the case to trial and securing payment of the judgment have been deducted from the amount of the original verdict. Your Honors, with all due respect, it is our position that that decision was wrongly decided for three reasons. First, the finding ignores the plain language of the act and the formula set forth by the legislature with regards to how a settlement is to be distributed when the total amount of liens exceed 40% of the verdict judgment settlement award or compromise. Let me ask you a question, Ms. Jones. I'm having a little trouble understanding and maybe I'm missing something here about why this even kicks in because the only lien that was asserted was for your client $2,891, which was less than 40% of $7,500. Your Honor, if you look at the petition to adjudicate liens, there were two other lien holders that were originally listed in the petition to adjudicate liens. The amounts are not set forth, but the plaintiff represented that the total amount of all liens exceeded 40% of the judgment. So that was just stipulated at the trial court level. Correct. Help me here. Let's say that hadn't happened. If those liens were not perfected, then we would not be in a situation here where the total amount of all perfected liens exceeded 40%. If the total amount of all liens did not exceed 40% and the act wouldn't even apply, then the lien holders would be able to recover 100% of their liens. The plaintiff's attorney would be able to recover pursuant to whatever contract he had and would not be capped at the 30% and the plaintiff would basically get what's left. Well, I guess you see where I'm having trouble here because under the act it says the total amount of all liens under this act, which would you read that to mean perfected liens that actually have to be paid? So we have a situation here where the liens that actually have to be paid do not exceed 40%. And so I guess the question I have is why are we even talking about all this? The reason we're talking about it, Your Honor, is because the plaintiff's attorney represented that the liens that were available for payment exceeded 40%. When you say the plaintiff represented, are you talking about in the petition? Yes. Okay, but then the others didn't show up and their liens were... The order indicates that they get nothing from the settlement because they did not appear. And without having had the benefit of the record yet, I mean, at some point then still, though, did the plaintiff say the act still applies because we started off with liens or we agree it applies? I mean, I'm just trying to figure out how... There was never any question, Your Honor, on the trial court that the lien act applied. There was never any question. But, I mean, it just seems to me like we should have never even got to this situation and your lien should have just been paid because the total of all liens under the act did not, the perfected liens, did not exceed 40%. I mean, I'm just, I'm having trouble with that because, I mean, regardless of how many liens there were to begin with, the only ones that were perfected under, or the only one that was perfected under the act did not exceed 40%. Your Honor, I'm not sure that that's necessarily true. The liens are perfected if notice is sent, and there's no indication that the liens are not properly perfected pursuant to the act. They, however, did not appear at the hearing, and I think there's a question as to whether a lien holder actually has to appear in order to... And that's the only one that's going to be paid. You know, it's a $5 lien. Then under the act, are we going to limit the attorney's fees and costs to 30% because we started off with more than 40% but even though they're not going to be paid? If the liens total more than 40%, the act kicks in. The total amount of all liens under this act, Your Honor, shall...  You see what I'm getting at? I mean, this is, we're talking about how to divide the money here. And if those liens aren't getting paid anyway, why do we divide the money in a way as if they were being paid? Because the language of the statute says that if there are liens that total more than 40% of the verdict, judgment, settlement, award, or compromise, that then the language of the act kicks in. Why shouldn't we interpret that to mean liens that are actually being paid since that's what we're doing here is dividing the money? Well, Your Honor, I think there's a distinction between perfected and liens that are being paid. But that doesn't say perfected liens either. No, it does not. It just says all liens under this act. Right. And the liens essentially can be asserted by simply sending notice pursuant to the act. Whether the lien holders decide to then abandon their liens at the time of the hearing, that's another question. But the act says, the plain language of the act says that it's the 40% of the total liens. And it's not clear what that means. Is liens paid? Liens filed? We don't know. So that may be something we have to interpret. Agreed? I mean, all we can do, Your Honor, is go by the act, and it says all liens. Okay. Your Honor, back to my argument, the first reason that we believe that the stamp decision was wrongly decided was that it ignores the plain language of the act. Second, this Court's formula does not guarantee that the plaintiff will receive at least 30% of the amount recovered in all cases. However, the plain language of the act does guarantee this. And third, standard repudiates Wendling by indirectly making lien holders pay part of the plaintiff's attorney's fees and costs. With regards to the first point, the act does not provide for a deduction of costs and attorney's fees before the calculation of the 40% is to be performed. In fact, throughout Section 10 of the act, it clearly states that all calculations are to be made from the verdict, judgment, award, settlement, or compromise, not the verdict, judgment, award, settlement, or compromise, less attorney's fees and costs. Furthermore, the act clearly states that the statutory limitations under this section may be waived or otherwise reduced only by the lien holder. So by deducting attorney's fees and costs before multiplying the remainder by 40%, you are in effect reducing the amount of the lien without the lien holder's consent. Like I said, throughout the act, if you look at the statutory provisions that talk about how to calculate the 40%, how to calculate the attorney's fees 30%, and how to divide the 40% between the two categories, it always ties the calculation to the verdict, judgment, award, settlement, or compromise. So by deducting attorney's fees and costs before calculating that, the statutory language has essentially been rewritten to make the amount of the verdict, judgment, settlement, award, or compromise less attorney's fees and costs. Furthermore, there is no need to deduct the costs because the costs are already accounted for in the attorney's lien. The attorney's fees and costs are not separate items for purposes of this Health Care Services Lien Act and the Attorney's Lien Act. The Attorney Lien Act and the cost of litigation are included in the Attorney Lien Act, which is capped at 30% of the verdict, judgment, settlement, award, or compromise. The Attorney Lien Act provides that attorneys at law shall have a lien upon all claims, demands, and causes of action, which may be placed in their hands by their clients for suit or collection, for the amount of any fee which may have been agreed upon by and between such attorneys and their clients, or in the absence of such agreement for a reasonable fee, for the services of such suits, claims, demands, or causes of action, plus costs and expenses. And in the case of Carlson v. Powers, a Second District case that I've cited in my brief, cited 225 Ildek, 3rd, 410, 587 Northeast 2nd, 1240, 167 Ildek, 625, the court held that the fees and costs are included in the lien. But that case was decided when we still had eight different lien acts. And the issue in that case was actually priority of liens. But the court clearly held that the Attorney Lien Act included fees and costs in the attorney's lien pursuant to the language of the statute. And when the Health Care Services Lien Act was enacted and the previous lien acts were repealed, the Attorney's Lien Act was amended at the same time. And both of the statutes now provide that the attorney lien is capped at 30%. When that happened, the court was clearly, or I'm sorry, the legislature was clearly aware, they're presumed to be aware of the case law interpreting the lien act at that time, the Attorney Lien Act at that time. And by capping it at 30%, the legislative intent was that the Attorney's Lien Act would continue to include costs and expenses, and that the total amount would be capped at 30%. So there is no need to deduct the costs to ensure that the plaintiff will still receive 30% of the judgment, because the costs of litigation are included in the attorney's fees, which in and of itself is capped at 30%. My second point, Your Honor, is that this court's interpretation of the act does not guarantee that the plaintiff will recover 30% of the amount recovered in all cases. The plain language of the act, however, does guarantee that the plaintiff will receive 30%. And the best way to discuss this issue, Your Honors, is to present an example, which I've set forth in my brief at pages 19 and 20. If we assume that the settlement is $100,000 and medical liens total $50,000, so the lien act applies because they're greater than 40%, and costs are $30,000. Under this court's decision, the plaintiff's attorney would get $30,000, 30% of $100,000 in his fees, plus the $30,000 in costs. So the plaintiff's attorney would get a total of $60,000, or 60% of the settlement. The lien holders would get $16,000, which is $100,000 minus the $60,000 that's being paid for the attorney's fees and costs, which leaves an amount remaining at $40,000, times the 40%, which totals $16,000. And the plaintiff would get the remainder, which is $24,000, or only 24%. So under this, the plaintiff's attorney has only 60% of the settlement. The lien holders, instead, liens have been reduced to 16% from the 40%, which, as I indicated earlier, conflicts with the language of the act. It says that their liens cannot be reduced below the 40%. And the plaintiff, instead of the 30% that this court intended them to receive, would only receive 24%. Under the language of the act, however, and in recognizing that the attorney's lien includes fees and costs, the plaintiff's attorney would receive $30,000, the medical lien holders would receive $40,000, and the plaintiff would get their $30,000 that the legislature intended them to get. So if the intent of the General Assembly was for the plaintiff to recover 30%, there's no need to create a new formula. The formula in the statutory provision that was set down by the legislature guarantees that the plaintiff will receive their 30% of the settlement. Finally, Your Honors, this Court's ruling in Stanton, in essence, indirectly applies the common fund doctrine when the Supreme Court in Wendland said that the common fund doctrine is inapplicable and cannot be applied to medical lien holders under the act. Now, I mean, just going back to my question, I'm sorry that I'm focused on that. I am listening to your argument. I do understand what's going on here. But the order entered by the Court in this case at paragraphs 8 and 9 says the following. The only lien served upon plaintiff is that held by Southern Illinois Hospital Services, DBA Memorial Hospital of Carbondale, in the amount of $2,891.64. Southern Illinois Medical Services Emergency and the non-responding potential lien holders failed to establish liens and are not entitled to distribution in the settlement proceeds. So, I mean, the trial court found that they didn't have liens. So, I mean, I get back to the total amount of lien holders being less than 40%. I mean, that's what the court found in the order entered. Probably, maybe you prepared it. I don't know. Your Honor, all I can say is that the court proceeding, the plaintiff represented the total liens. And if you look at the adjudicate order, the petition to adjudicate liens, he has identified King Creek Allergy Group, CACI, and Memorial Hospital of Carbondale as people who have asserted, had given notice that they claim a lien or interest on the settlement. It just seems possible to me that everything, you know, briefed and what happened in the trial court is all based upon a predicate that isn't there. That being that the act applies because the total liens are more than 40%, which the court specifically found they were not. And, Your Honor, the only thing I can say, Your Honor, is that the plaintiff presented to the court in their petition to adjudicate liens, acknowledging that the liens were greater than 40%, because if they weren't greater than 40%, there would have been no need for him to file a petition to adjudicate liens. And everybody argued about, you know, everything else at the end, and nobody really talked about that again. No, Your Honor. The everyone filed a petition to adjudicate liens on the basis that the total liens that had been asserted were greater than 40%. The plaintiff did not present any liens to the court with the petition, other than the petition indicating that the total liens were greater than 40%. Well, I mean, the court found the only lien is yours in an amount less than 40%. And that's because our lien, we appear, and the plaintiff did not require us. I had a copy of the lien with me to present to the court and present it to evidence, but we did not, were not required to prove up our lien because it was stipulated that our lien was valid. And the other two lien holders that were identified in the act did not appear. Okay. But obviously, Your Honor, if the lien act does not apply, then the order needs to be remanded so that the court can enter a new order awarding us the full amount of our lien. Right. Right. My third position, Your Honor, is that this court distinguished Wendling from Stanton on the ground that the Stanton case concern only costs and not attorney's fees, and the Wendling court only determined that lien holders are not responsible for a proportionate share of attorney's fees under the common fund doctrine. However, the Wendling court clearly held that the common fund doctrine does not apply. And as indicated by the Supreme Court previously in the case of Orsby, Chapman, and Associates, the common fund doctrine permits a party who creates, preserves, or increases the value of the fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees. So, and in fact, in the previous court's previous decision of Maynard v. Harper, which the Wendling court reaffirmed, the plaintiff, the lien holder, was appealing an order that required to pay not only a fair share of attorney's fees, but also costs. So the common fund doctrine applies not only to attorney's fees, but also to costs. And therefore, therefore, the lien holders cannot be required to pay a portion of either the costs or the attorney's fees. And this court's formula, in essence, reduces the amount that the lien holders are entitled to recover and are available for them to recover by the costs that are being incurred, which indirectly applies to the common fund. Thank you, counsel. In case you need to take another advice. Thank you, Your Honor. The opinion shortcoming will come short and will be adjourned until 10 o'clock. All rise.